Matter of William C. Jones, an Attorney at Law.

SUPREME COURT—IN BANCO.

OCTOBER. TERM—1870.

*Hartwell and Widemann, J. J.*

MATTER OF WILLIAM C. JONES, AN ATTORNEY AT LAW.

AN ATTORNEY AT LAW cannot waive his client's CONSTITUTIONAL RIGHT to meet the witnesses against him, but his agreement so to do, is not of itself ground for dismissal from the bar.

On information of the Attorney General, rule to show cause issued, returnable before the Court in banco.

The information presents that May 25th, 1870, one Peterson was committed for trial at the July Term of this Court, for assault with a deadly weapon, two witnesses being at the same time committed, to testify. That the respondent appeared for the prisoner at said term of Court, when proceedings were had of which the following is the record: "The King *vs.* Orloff Peterson. This case not on the calendar, but Attorney General and W. C. Jones, for defendant, agreed that certain depositions of witnesses, now in detention, might be taken by the Clerk, to be used in any trial for the matter charged, and case to stand continued to next term." That July 19th, the depositions were taken, and the following agreement endorsed thereon: "It is agreed that the foregoing depositions of William Carroll and Patrick O'Donnell may be used in evidence in the trial of any indictment against Orloff Peterson for the assault on William Carroll above referred to, and that no further proof of the identity of the said Orloff Peterson shall be required. Stephen H. Phillips, Attorney General. W. C. Jones, Attorney for defendant. Court House, Honolulu, July 19th, 1870." That

the respondent held himself out as fully authorized to make the said agreement, and that the Attorney General, relying on the good faith of the respondent as an attorney of this Court, and believing him to have full authority in the premises, allowed the said witnesses to leave the kingdom, having no other testimony on which to rely ; all of which facts the respondent hath at all times well known, but he nevertheless gave the Attorney General, up to the day set for trial, no intimation that the said agreement was unauthorized by the prisoner, or that exception would be taken to its enforcement, at which late period it was impossible to obtain testimony, and it was adjudged to be the duty of the Court no longer to detain the said Peterson, who was therefore discharged, and the enforcement of the penalty of the law against him became impossible.   "And the Attorney General further says it is incident to the office of an attorney in this Court, that his right to represent his client should be unquestioned, and that all other officers of the Court and of the law have a right to assume, at all times, that all acts done in the name and behalf of their respective clients, in open Court or in other proceedings necessarily connected with the conduct of cases pending in Court, have the full sanction and approval of those whom they claim to represent, and to govern themselves accordingly, and that when proceedings are had upon the faith of such assumed authority, which said attorneys permit to be had without suggesting their want of authority, to the prejudice of public prosecutions or of private suitors, they should be held responsible for the fraud resulting from such concealment, as otherwise the profession would be exposed to great public scandal, and the confidence which ought to be reposed in all acts of attorneys and counsellors of this Court would be wholly destroyed.

"And the Attorney General further says that the failure of the prosecution against the said Orloff Peterson is wholly and directly attributable to the confidence which was mis-

placed in the agreement of the said William C. Jones, that the written testimony of said parties should be read in evidence at the trial of the indictment against said Orloff Peterson, and that said William C. Jones was guilty of a breach of duty, as an attorney and counsellor of this Court in consenting to such an agreement without authority from his client, and not disclosing such want of authority to said Attorney General, although well knowing that fatal reliance was placed upon said agreement, and the implied pledge of authority therein contained.

"Wherefore, the said Attorney General moves that said William C. Jones be ordered to show cause why his name should not be stricken from the roll of Attorneys and Counsellors of this Court, and such other proceedings had as to this honorable Court may seem meet."

The answer is as follows, viz.:

1. "That the said complaint sets forth no substantial cause for striking the name of an Attorney from the roll, and is insufficient in law.

2. "That the statements in said complaint amount to this: that the respondent made an agreement in good faith under a mistaken impression of the law, and, after he had discovered his error, admitted the same to the Court.

3. "And therefore the respondent, in further answer to this complaint and the rule to show cause, respectfully makes the following statement of facts to the Court: That at the adjourned term of the Supreme Court, in the month of July, 1870, as set forth in said complaint, the Attorney General requested the respondent to agree to the taking of the depositions of William Carroll and Patrick O'Donnell, witnesses in the case of the King vs. Orloff Peterson, in order to release them from confinement, and this respondent, out of motives of humanity and to release said witnesses from prison, in good faith consented to taking said depositions, without reflecting at the time that he was taking a respon-

Matter of William C. Jones, an Attorney at Law.

sibility not authorized by the Constitution and laws of this Kingdom; that at the time of taking said depositions, to wit, on the 19th of July, 1870, the said Orloff Peterson was not present, and L. McCully, Esq., the Clerk, enquired if the Attorney General did not require the presence of the said Orloff Peterson, when he, the Attorney General, replied that he did not require his presence, and this respondent avers that he did not at any time consult with said Orloff Peterson about the taking of said depositions, and did not think at the time that he had not full power to act in the premises; that after said depositions were taken, this respondent did not think any more of the matter until the present term of the Supreme Court, when it was suggested to him by an Attorney of this Court, that said depositions were not legal, and that this respondent's agreement with the Attorney General was of no force or validity to conclude his rights; whereupon this respondent examined the Constitution and the authorities upon the subject, and became convinced that he had exceeded his authority in the matter, and in fact did not arrive fully at the conclusion and examine fully the authorities till the morning of the day fixed for trial, when, as soon as he saw the Attorney General, he informed him that he felt convinced that Orloff Peterson could not be legally convicted on the depositions, and that the said Attorney General called the matter up before the Court as soon as the case was called for trial, when this respondent, acting under the influence of conscientious scruples, because he believed he had erred in making the agreement aforesaid, and that Orloff Peterson had constitutional rights which the respondent as an Attorney could not waive, produced the law of the case to the Court, and retired from the cause. And the respondent avers that he acted in good faith in the whole transaction, and under the highest conscientious motives, and had not the remotest idea of acting deceitfully and in bad faith with the Attorney General or the Government; and

this respondent further avers that the high position and presumed legal learning of the Attorney General threw him off his guard, and he presumed he was acting legally when the Attorney General proposed the said agreement to him, and had no other idea at the time but that the depositions were legal, and could be read on the trial of said Orloff Peterson, and that if there is any culpability or. blame in this matter, it should rest on the Attorney General, and not on him; for an officer of the Crown is presumed to know the law, and when he does any act which is calculated to overreach a prisoner or his counsel by procuring the waiver of a constitutional right against clear principles of law, and then throwing the blame' upon the prisoner's Attorney, he is certainly in the wrong."

At the hearing, the Attorney General produced and read the following entry in the Clerk's Journal, viz.: "July 26th, 1870. July Term. Prisoner Peterson arraigned and pleaded not guilty. Case continued by agreement." L. McCully, Clerk of the Court, testified that when the depositions were taken, some one remarked that it was very hard that the witnesses, hard laboring men, should be kept in confinement so long, already three months; that no intimation was then made by the respondent of his want of authority to agree to the depositions, and that he thinks the respondent then asked, "Where is the prisoner?" to which the Attorney General replied, "The prisoner is not called for."

D. K. Fyfe, jailor, testified that the respondent visited the prisoner Peterson and told him about the depositions shortly after they were taken.

W. C. Parke, Marshal, testified that on the first day of this term, the respondent moved that Peterson's case be continued to get further testimony, but on consulting his client withdrew the motion.

S. H. Phillips, Attorney General, for the rule.

W. C. Jones, *pro se*, contra.

Matter of William C. Jones, an Attorney at Law.

OPINION OF THE COURT BY HARTWELL, J.

By the Civil Code, practitioners of law "shall be summarily amenable to the Courts of Record, and may be fined, imprisoned, or dismissed from the roll of practitioners for satisfactory cause, upon the complaint of any party aggrieved by their mal-practice, or for non-payment of moneys collected by them, for private parties, or for any deceit or other gross misconduct." Section 1066.

"Practitioners of law shall have control to judgment and execution of all suits and defences confided to them; provided, however, that no such practitioner shall have power to compromise, arbitrate and settle such matters confided to him unless upon special authority in writing from his client." Section 1069.

"The parties to a *civil suit* may, with the consent of Court, waive the right to a trial by jury either by written consent, or by oral consent in open Court entered on the minutes." Section 1137.

"No person shall be held to answer for any crime or offence, except in cases of impeachment or for offences within the jurisdiction of a Police or District Justice, or in summary proceedings for contempt, unless upon indictment fully and plainly describing such crime or offence, and he shall have the right to meet the witnesses who are produced against him, face to face ; to produce witnesses and proofs in his own favor ; and by himself or his counsel, *at his election*, to examine the witnesses produced by himself, and cross-examine those produced against him, and to be fully heard in his defense." Article 7, Const.

The delicate and responsible duties of an attorney-at-law correspond with the extent of the powers entrusted to him. He must exercise good faith in his dealings with Court, clients, and his legal brethren. He is responsible for the exercise of a reasonable degree of professional skill, and for proper diligence in attending to his causes, failing in which,

or in case of deceit or mal-practice, he may become liable to the Court under the statutes cited, or to clients in damages.

The respondent waived his client's constitutional right to meet witnesses in open Court. There is a large class of agreements between counsel, which facilitate trials, are of mutual advantage, and by which clients are bound. Such agreements usually refer to matters of rules and practice, continuances, waivers of common law rules of evidence, of defects in pleadings, processes, rights of appeal, &c., in which counsel are presumed to know, and to be duly authorized to represent, the client's interests. But in criminal causes, it is unsafe to waive constitutional requirements. The maxim, *"Quilibet potest renunciare juri pro se introducto,"*—that any one may waive rights intended for his own benefit,—is restricted to the rights of the party himself, and can not affect the rights of others. The public are interested that criminal trials be conducted according to the forms of law. Hence, no one can waive the presentment and finding of an indictment for an indictable offence. Under our statute, clients in civil suits would no doubt be bound by agreements of counsel to waive jury, but it is doubtful whether a party himself could make a valid agreement to waive a jury in a criminal cause cognizable before a jury.

The result of the respondent's agreement was that the prisoner escaped trial. He says he acted in good faith, and we see no reason to doubt his word. His motion to continue the cause was certainly inconsistent with an intention to rely on constitutional defects in the testimony. He should have lost no time, however, in notifying the Attorney General of his subsequent view of the law, and of the course he intended to pursue. No such agreement should in fact be made without reflection upon its validity, and without consulting the client. We do not think that the responsibility assumed by the respondent, in thus accepting the proposition to make this agreement, is entirely removed by dividing it, nor can

we see any excuse for an hour's delay to inform the Attorney General of all the facts in the case.

Further than this, we attach no blame to the respondent, and the rule is accordingly discharged.

Honolulu, November 20th, 1870.